1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11   DEANNA-KATHLEEN YATES, and          Case No. 1:23-cv-00155-JLT- EPG
     RONNIE YATES,
12                                        ORDER DISMISSING SHERMAN ACT
                    Plaintiffs,           CLAIM WITHOUT LEAVE TO AMEND;
13                                        DECLINING SUPPLEMENTAL
          v.                              JURISDICTION OVER REMAINING
14                                        CLAIMS; DIRECTING CLERK OF COURT
     THE MONEY SOURCE, INC., et al.,      TO CLOSE CASE
15
                    Defendants.           (Doc. 17)
16

17          Deanna-Kathleen Yates and Ronnie Yates, proceeding *pro se*, initiated this action against

18   Defendants The Money Source, Inc., et al., asserting claims for quiet title to their real property,

19   accounting, and restraint of trade. (Doc. 17 at 2.) Plaintiffs contend that Mrs. Yates issued "bonds

20   of discharge" to the "holder" of their mortgage, payment which Defendants have allegedly

21   refused to accept. (*See id.*)

22          In their complaint, Plaintiffs name ten defendants, a list comprised of several

23   mortgage/lending business and various government actors: The Money Source, Inc.; Midland

24   Mortgage; Fannie Mae, (named "Fannie Mae REMIC Trust 2017-21" and "Fannie Mae, Mail

25   Draw Assignments" in the complaint); Cenlar FSB; Mortgage Electronic Registration Systems,

26   Inc.; Calaveras County Clerk Recorder; Frank La Salla, President and Chairman of the

27   Depository Trust & Clearing Corporation; Janet Yellen, Secretary of the United States

28   Department of Treasury; and Francisco Alicea, Secretary of Treasury of Puerto Rico. (*Id.* at 5-8.)

                                              1

1    **I.    Facts and Procedural Background**

2          On or about January 16, 2015, Plaintiffs purchased the real property located at 4628 South

3    Burson Road, Valley Springs, CA 95252. (Doc. 14-1, Ex. 2.) To cover the purchase of the home,

4    Plaintiffs obtained a loan in the amount of $290,007.00 from The Money Source, Inc., DBA

5    Endeavor America Loan Services, secured against the real property by a Deed of Trust ("First

6    DOT") in favor of Mortgage Electronic Registrations System, Inc. ("MERS"). (*Id.*, Exs. 1, 2.)

7          On or about February 10, 2017, Plaintiffs refinanced the real property by way of a loan in

8    the amount of $281,389.00 from The Money Source, Inc. (*Id.*, Ex. 1.) This loan was also secured

9    against the real property in a second Deed of Trust ("Second DOT"). (*Id.*, Ex. 2.) In 2022,

10   Plaintiffs were notified that the interest in this refinanced loan was to be transferred from The

11   Money Source, Inc. to Midland Mortgage, a division of MidFirst Bank. (*Id.*, Ex. 4.) On or about

12   March 23, 2023, the beneficial interest under the Second DOT was assigned from MERS, as

13   beneficiary and nominee for The Money Source, Inc., to Midland Mortgage. (*See* Doc. 26, Ex. E

14   at 1.)

15         On February 1, 2023, Mrs. Yates filed a complaint attempting to avoid a foreclosure on

16   her real property by alleging "bonds of discharge" were issued to the "holder" of the loan. (*See*

17   Doc. 1 at 6.) According to her, "[p]laintiff/RPII tendered bonds for discharge. It is presumed that

18   the alleged mortgage has been discharged." (*Id.* at 12.) She considered these "bonds" to constitute

19   a valid tender of payment under the Uniform Commercial Code. (*See id.* at 9-10.) Mrs. Yates also

20   brings a quiet title claim, seeking to clear her home of the second trust deed loan, and an order

21   compelling Defendants to produce a final accounting statement reflecting the "discharge bonds."

22   (*Id.* at 2.)

23         Defendants Cenlar FSB, Calaveras County Clerk Recorder, Midland Mortgage, and

24   Fannie Mae have all filed motions to dismiss (*see* Docs. 24, 29, 32, 49), while Defendant MERS

25   filed a response disclaiming any interest in the property in question. (*See* Doc. 23.) On March 14,

26   2023, the Court ordered Mrs. Yates to show cause why her claims should not be dismissed for

27   lack of subject matter jurisdiction. (*See* Doc. 16.) On March 17, 2023, she responded with an

28   amended complaint ("FAC") that joined her husband (Ronnie Yates) as a plaintiff, added a third

1  claim (Restraint on Trade), and joined three defendants (Frank La Salla, Janet Yellen, and

2  Francisco Alicea). (*See* Doc. 17.) On April 6, 2023, the Court dismissed Defendant Cenlar FSB

3  after Plaintiffs stipulated to a voluntary dismissal (*see* Doc. 28), and on April 19, 2023, Defendant

4  Cenlar FSB withdrew their motion to dismiss. (Doc. 34; *see* Doc. 29.) Plaintiffs did not file an

5  opposition to any of the remaining motions to dismiss and the time to do so has expired. *See*

6  Local Rule 230(c).

7      The Court finds the matter is suitable for decision without oral argument pursuant to Local

8  Rule 230(g). For the reasons stated below, Defendant Fannie Mae's Federal Rule of Civil

9  Procedure 12(b)(6) motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND** as to

10  the only federal claim in this case, and the Court declines to exercise supplemental jurisdiction

11  over the remaining claims.[1]

12  **II.    Legal Standard**

13      Under Rule 12(b)(1), a district court must dismiss a complaint if the court does not have

14  jurisdiction over it. In reviewing a "facial" jurisdictional attack, the jurisdictional challenge is

15  confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th

16  Cir. 2004). The Defendants assert that the allegations in the complaint are insufficient "on their

17  face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

18  Cir. 2004). To resolve this challenge, the Court assumes that the allegations in the complaint are

19  true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392

20  F.3d at 362.

21      Under Rule 12(b)(6), a district court must dismiss if a claim fails to state a claim upon

22  which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must

23  _____

24  [1] On June 27, 2023, Plaintiffs filed a document entitled "Notice of Attempt at Stipulation" which appears to indicate Plaintiffs' willingness to dismiss Defendant "Fannie Mae REMIC Trust 2017-21" from this matter. (Doc. 53.) The Court could construe this as a notice of voluntary dismissal, Fed. R. Civ. P. 41(a)(1)(A)(i), though it is unclear

25  whether Plaintiffs intend to dismiss all Fannie Mae entities from the case. (*See generally* Doc. 53.) Assuming the filing was intended to dismiss all Fannie Mae entities, that would moot Fannie Mae's pending motion to dismiss.

26  Regardless, it is appropriate for the Court to rule on the issues raised therein, including Fannie Mae's challenges to the Restraint of Trade claim, because a Court may sua sponte dismiss for failure to state a claim so long as notice has been provided. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015). Here, Fannie Mae's

27  motion provided ample notice that the Restraint of Trade claim could be dismissed for failure to state a claim. The deadline for Plaintiff to oppose that motion expired on June 13, 2023, approximately two weeks prior to the filing of

28  Plaintiffs' "Notice of Attempt at Stipulation."

allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Twombly,* 550 U.S. at 570.

The Court accepts as true all well-pleaded allegations of material fact, but the Court is not required to accept as true merely conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In the antitrust setting, the Supreme Court noted that "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possesses enough heft to 'sho[w]' that the pleader is entitled to relief.'" *Twombly,* 550 U.S. at 557.

**III.    Sherman Antitrust Act**

Plaintiffs allege a violation of the Sherman Antitrust Act, the only federal claim advanced in the complaint. However, their complaint fails to state a claim under the Sherman Act, as discussed below.

**A.  Failure to State a Claim under the Sherman Act**

Plaintiffs allege a restraint of trade claim under the Sherman Act against Defendants Frank La Salla, Janet Yellen, and Francisco Alicea (and possibly the other Defendants, though Plaintiffs' complaint is unclear on that point). Plaintiffs cite to Section 1 of the Sherman Act that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States. . . is declared to be illegal." (Doc. 17 at 12.) While Plaintiffs refer to antitrust law, it appears they have a much more general impression of what suffices to establish a restraint of trade claim, as they also rely upon Merriam Webster's Dictionary definition of restraint of trade. (Doc. 17 at 11.) A restraint of trade claim under the

4

1   Sherman Act, however, has well defined legal elements.

2         Section 1 of the Sherman Act "does not prohibit [all] unreasonable restraints of trade . . .

3   but only restraints effected by a contract, combination or conspiracy." *Copperweld Corp. v.*

4   *Independence Tube Corp.*, 467 U.S. 752, 775 (1984). To state a claim under Section 1, Plaintiffs

5   must allege "evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy

6   among two or more persons or distinct business entities; (2) by which the persons or entities

7   intended to harm or restrain trade or commerce among the several States, or with foreign nations;

8   (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th

9   Cir. 2008). A complaint must have "enough factual matter (taken as true) to suggest that an

10  agreement was made. . . it [] calls for enough fact[s] to raise a reasonable expectation that

11  discovery will reveal evidence of illegal agreement." *Twombly,* 550 U.S. at 556. As such, "a bare

12  assertion of conspiracy will not suffice." *Id*. Plaintiffs must also allege facts that would show an

13  anticompetitive impact on the market as a whole, because antitrust laws were enacted for "the

14  protection of *competition*." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Section 4

15  of the Clayton Act permits private causes of action for Sherman Act violations. 15 U.S.C § 15(a);

16  *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

17        Here, Plaintiffs allege that Defendant Frank La Salla or "actors at [his] direction, in

18  respondeat superior relation" engaged in "restraint of trade" when he allegedly "held [the bonds]

19  in delay from processing to discharge the alleged debt at issue" held by MidFirst Bank. (Doc. 17

20  at 11.) Furthermore, Treasury officials allegedly collaborated on this action, as "'[a]ll roads lead'

21  to the United States Treasury for remedy. This is actionable in Restraint of Trade." (Doc. 17 at 2.)

22  Absent, however, are any factual allegations explaining how the alleged delay of the "discharge

23  bonds" was the result of a "contract, combination or conspiracy" that violated the Sherman Act.

24  *Copperweld,* 467 U.S. at 775. The Court emphasizes that a restraint of trade claim under the

25  Sherman Act does *not* arise from "any activity that tends to limit a party's ability to enter into

26  transactions," as Plaintiffs erroneously state in their FAC. (Doc. 17 at 11.) Rather, Plaintiffs must

27  point to conduct or actions, taken as a result of an agreement or conspiracy, that undermines

28  competition in the market. *See Copperweld,* 467 U.S. at 775.

1   Plaintiffs provide no specific facts of an illicit conspiracy or contract between the

2   Defendants, merely alleging that as "fiscal agents of the United States [Treasury]" Defendants

3   operated in tandem. (Doc. 17 at 12.) When making allegations against multiple defendants, a

4   plaintiff must plead against each defendant; they cannot combine them all together

5   indiscriminately. *See e.g.*, *Bonnette v. Dick*, 2020 WL 3412733, at *3 (E.D. Cal. Jun. 22, 2020);

6   *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (noting that plaintiff alleging

7   fraud improperly grouped multiple defendants together). Plaintiffs' inability to particularly

8   alleged the misconduct as to each Defendant further complicates their attempt at alleging a

9   conspiracy. As mentioned, a blanket "assertion of conspiracy will not suffice." *Twombly,* 550

10   U.S. at 556. Furthermore, Plaintiffs do not explain how Defendants' alleged wrongdoing would

11   have prevented entry into a market or limited competitive activity within that market. The

12   Sherman Act is primarily concerned with avoiding monopolistic behavior within markets, not

13   bolstering an individual's right to transact. *See Brown Shoe Co.*, 370 U.S. at 320 ("the legislative

14   history illuminates congressional concern with the protection of competition, not competitors").

15   To the extent that Plaintiffs are attempting to bring a claim under the Sherman Act, such a claim

16   fails because Plaintiffs' complaint "does not answer the basic questions: who, did what, to whom

17   (or with whom), where, and when?" *Kendall,* 518 F.3d at 1048.

**B.  Government Action Cannot "Restrain Trade" Under the Sherman Act**

19   The restraint of trade claim fails for an additional, independent reason. Plaintiffs' assertion

20   that Defendants Janet Yellen and Francisco Alicea, both federal government officials, refused to

21   distribute "discharge bonds" from the Treasury is not the kind of conduct which would constitute

22   a Sherman Act violation.

23   Where a restraint upon trade or monopolization is the result of valid governmental action,

24   as opposed to private action, no violation of the Sherman Act can be made out. *E. R.R. Presidents*

25   *Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136 (1961). "Government operations may

26   only be carried out by the government, and no rival, would-be government may compete for the

27   opportunity to perform the governmental function. Governing is by its very nature a non-

28   competitive act. Thus, monopolistic practices with respects to the conduct of government do not

1  violate the Sherman Act." *Sheppard v. Lee*, 929 F.2d 496, 499 (9th Cir. 1991). Notably, "acts of

2  both state governments and federal instrumentalities are immune from antitrust liability."

3  *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985); *see also Sea-Land*

4  *Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 246 (D.C. Cir. 1981) ("the United States, its agencies and

5  officials, remain outside the reach of the Sherman Act.")

6       Plaintiffs assert they can pay off their mortgage with "discharge bonds" housed in the

7  Treasury, yet the Treasury itself is allegedly impeding their ability to do so. (*See* Doc. 17 at 11.)

8  The purported tender using "discharge bonds" or other invalid forms of payment drawn on a

9  United States Treasury Account is part of a discredited legal theory, pushed by "sovereign

10  citizens," which has been rejected by multiple courts.[2] Taking Plaintiffs' allegations at face value,

11  Defendants Yellen's and Alicea's alleged refusal to permit payment via fake tender is an exercise

12  of normal governmental operations that is not subject to the Sherman Act. Furthermore, as

13  officials of the United States government, the alleged conduct of Defendants Yellen and Alicea

14  would be outside the scope of the Sherman Act. *See Sea-Land Serv., Inc.*, 659 F.2d at 246 ("[T]he

15  United States, its agencies and officials, remain outside the reach of the Sherman Act"). Under

16  these circumstances, Plaintiffs' restraint of trade claim as to these government officials is barred

17  under the Sherman Act.

18       **C.  Leave to Amend**

19       Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be

20  freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to

21  facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*,

---

22

23  [2] *See Medel v. Pennymac Fin. Servs.*, 2015 WL 7770857 (D. Colo. Nov. 3, 2015) (granting defendants' motion to dismiss for failure to raise a claim after rejecting plaintiff's assertion that he paid off his mortgage via a "Payment Bond" backed by his "offset account" at the United States Treasury); *Dinsmore-Thomas v. Ameriprise Fin., Inc.*,

24  2009 WL 2431917 (C.D. Cal. Aug. 3, 2009) (granting defendant's motion for summary judgment after holding that plaintiff's "Private Bond Order for Payment" allegedly secured by the Hawaiian Treasury was not a legitimate form

25  of payment); *Bryant v. Washington Mut. Bank*, 524 F.Supp.2d 753 (W.D. Va. 2007), *aff'd*, 282 Fed. Appx. 260 (4th Cir. 2008) (dismissing plaintiff's breach of contract claim after finding that plaintiff's "Bill of Exchange" allegedly

26  payable by the Treasury was a "worthless piece of paper" that could not satisfy her mortgage payment); *see also United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (stating that sovereign citizen ideology is "utterly

27  meritless"); *Gravatt v. United States*, 100 Fed.Cl. 279 (2011) (dismissing plaintiff's complaint for a frivolous allegation that he could recover money allegedly held by the Treasury in a "National Registry/Trust Account"); *In re*

28  *Dominick*, 2020 WL 1173505 (N.D. Cal. Feb. 20, 2020) (dismissing plaintiff's complaint with prejudice and rejecting the theory of individual Treasury accounts for each U.S. citizen).

203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (stating that the court need not extend the general rule that parties are allowed to amend their pleadings if amendment "would be an exercise in futility"). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

For the reasons stated above, the Court finds that Plaintiffs' Sherman Act claim is frivolous as it is grounded upon valid conduct undertaken by a federal government agency. Any attempt to re-plead this claim would necessarily depend upon Plaintiffs' wholly meritless bonds of discharge theory. Therefore, because it is clear that the deficiencies the Court identified cannot be cured by amendment, leave to amend is inappropriate.

## IV.   Other Potential Sources of Subject Matter Jurisdiction

Having dismissed the Sherman Act Claim without leave to amend, the Court briefly examines the remaining claims to determine whether any provide an independent basis for subject matter jurisdiction. The burden of establishing subject matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1085 (S.D. Cal. 2016).

Federal question jurisdiction exists when the dispute arises under the Constitution, laws or treaties of the United States. 28 U.S.C. § 1331. The determination of subject matter jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also California v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000). The complaint must establish "either that [1] federal law creates the cause of action or that [2] the plaintiff's right to relief necessarily depends on

1   resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An*

2   *Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008) (quoting

3   *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

4          Plaintiffs fail to identify in their complaint which federal law, if any, provides a cause of

5   action upon which relief can be granted for quiet title or accounting under the alleged

6   circumstances. Plaintiffs refer to some federal statutes and maritime law cases, but not a single

7   statute or case appears to establish a federal question relevant to the claims presented. For

8   example, Plaintiffs cite 12 U.S.C. § 266, which authorizes certain kinds of banking institutions to

9   be employed as fiscal agents of the United States; 26 U.S.C. § 6325, which provides, among other

10   things, mechanisms by which the Secretary of the Treasury may release tax liens; and 48 C.F.R.

11   § 53.228, which lists the standard forms used in connection with bonding and insuring federal

12   acquisition contracts. None of Plaintiffs' cited statutes appear to be directly relevant to the claims

13   at issue in this case, nor is it apparent that they establish a cause of action for Plaintiffs to pursue

14   in this Court.

15          Plaintiffs' complaint invokes diversity jurisdiction but their attempt to do so fails. Under

16   28 U.S.C. § 1332, there must be complete diversity between the parties for there to be federal

17   jurisdiction. Thus, the "citizenship of each plaintiff [must be] diverse from the citizenship of each

18   defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Plaintiffs allege their domicile and

19   citizenship is in California. (Doc. 17 at 5.) They also name as Defendant the Calaveras County

20   Clerk Recorder, a public official who is domiciled in California. (*Id.* at 6; *see also* Doc. 25 at 1.)

21   Therefore, complete diversity is not alleged.

22   **V.    Supplemental Jurisdiction**

23          When a federal court has original jurisdiction over a claim, the court "shall have

24   supplemental jurisdiction over all other claims that are so related to claims in the action . . . that

25   they form part of the same case or controversy." 28 U.S.C. § 1367(a). State claims are part of the

26   same case or controversy as federal claims "when they derive from a common nucleus of

27   operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial

28   proceeding." *Kuba v. 1-A Agric. Assoc.*, 387 F.3d 850, 855-56 (9th Cir. 2004) (internal quotation

1    marks, citation omitted).

2         However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right,"

3    and district courts "can decline to exercise jurisdiction over pendent claims for a number of valid

4    reasons." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (internal quotation

5    marks, citations omitted). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may "decline

6    supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original

7    jurisdiction," and need not state its reason for dismissal. *San Pedro Hotel Co., Inc. v. City of L.A.*,

8    159 F.3d 470, 478 (9th Cir. 1998).

9         Because Plaintiffs fail to state a cognizable federal claim under the Sherman Act and

10   amendment of that claim would be futile, the Court declines to retain supplemental jurisdiction

11   over Plaintiffs' quiet title and accounting claims.

12                                 **CONCLUSION**

13        For all the reasons set forth above:

14   (1)    Fannie Mae's Motion to Dismiss (Doc. 49) is **GRANTED** as to the Sherman Act

15          Claim, which is **DISMISSED WITHOUT LEAVE TO AMEND.**

16   (2)    Finding no other basis for the exercise of subject matter jurisdiction, the Court

17          declines to exercise supplemental jurisdiction over the remaining state law claims.

18   (3)    The Clerk of Court is directed to **CLOSE THIS CASE**.

19

20   IT IS SO ORDERED.

21        Dated:   **June 29, 2023**

          UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28